

# In the Missouri Court of Appeals
# Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| DANIEL J. ALABACH, | ) | No. ED101983 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Circuit Court of |
| vs. | ) | St. Louis County |
| | ) | |
| LISA A. ALABACH, | ) | Honorable Douglas R. Beach |
| | ) | |
| Respondent. | ) | Filed: December 15, 2015 |

Before Sherri B. Sullivan, P.J., Patricia L. Cohen, J., and Kurt S. Odenwald, J.

PER CURIAM.

## *Introduction*

Daniel Alabach (Husband) appeals the judgment of the Circuit Court of St. Louis County dissolving his marriage to Lisa Alabach (Wife). Husband claims the trial court erred in: (1) awarding maintenance to Wife (Point I); (2) calculating maintenance (Points II and III); (3) awarding Wife a marital interest in the equity of the marital residence (Point IV); calculating Wife's interest in the marital residence (Point V); dividing and calculating the parties' marital interests in a rental property (Points VI – VIII); awarding Wife a marital interest in his life insurance policies (Point IX); dividing and distributing three marital accounts (Point X); and awarding Wife attorneys' fees (Point XI). We reverse and remand as to Husband's Point X.

With respect to the remaining points, we affirm the trial court's judgment pursuant to Rule 84.16(b).[1]

### *Factual and Procedural Background*

Husband and Wife married in June 2007. Husband filed a petition for dissolution of marriage in April 2013, and Wife filed an answer and counter-petition in June 2014.

On January 1, 2014, the trial court conducted a trial on the parties' petitions for dissolution. At the start of the hearing, the trial court announced that the parties had "been working this morning and they have resolved certain items, but not everything," and requested the parties "put [the agreement] on the record." Counsel for Wife proceeded to recite the parties' stipulations, which provided, in pertinent part:

> The parties have an E-Trade account, 5015. The shares of [Exide] Technologies, which [Wife] paid for with her separate property, shall be returned to her. The balance in that account shall be divided equally between the parties. . . .
> [Husband] shall pay [Wife] one-half of the increase in the value of Northwestern Mutual Life Insurance policies ending in 846 and ending in 929 from the date of the marriage to the present date. So one-half of the increase in the cash surrendered value. . . .
> [Wife] shall receive one-half of the increase in value from the date of the marriage to the present of First Banker's [sic] Banc, B-A-N-C, Securities, Inc., SEP Individual Retirement Account. . . .
> [Husband] shall receive the stock in Tag Group, Inc. The only dispute the parties had, which will be tried in the Court, is the value of a certain money market account held by the Tag Group, Inc. . . .

Counsel for both parties affirmed that the "stipulation is binding upon both parties" and "that's how [they would] prepare a division of property for a proposed judgment[.]" When Wife's counsel inquired whether the trial court wanted the parties "to provide [it] with the amounts for

---

[1] We have reviewed Husband's remaining points and find no trial court error. An extended opinion as to those points would have neither precedential nor jurisprudential value. Therefore, Points I – III, VI – IX, and XI are affirmed in accordance with Rule 84.16(b). We have furnished the parties a memorandum setting forth the reasons for our decision.

2

all of those accounts through testimony or just exchange them to each other?," the trial court answered, "You've all been working on those numbers, so I'm just going to let you give them to me by a joint stipulation when you do a proposed division of [sic] judgment."

Wife's counsel informed the trial court that unsettled issues remained relating to the Wild Horse Creek property and Wife's interest in the marital residence. When Wife's counsel stated that the parties would present evidence of marital misconduct, the trial court advised that it was "not going to be bound by [the stipulated] property division" because evidence of marital misconduct might impact the property division as well as maintenance.

Husband and Wife both testified at the hearing. At the conclusion of evidence, the trial court asked each party to submit "a proposed judgment and findings because I'm somewhat confused by your earlier stipulation and how it's going to tie into what I'm supposed to be doing."

On February 21, 2014, the trial court entered its judgment of dissolution of marriage. Husband and Wife filed motions to amend the judgment, and the trial court heard additional evidence on July 1, 2014.

The trial court entered an amended judgment on August 19, 2014. In the amended judgment, the trial court determined it would "abide by the stipulation that was placed on the record . . . ." The trial court also found that the Tag Group money market account, which contained approximately $10,000, was marital property. Husband appeals.

### Standard of Review

"Our standard of review in a dissolution action is governed, as in any court-tried case, by the standard set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)." Wennihan v. Wennihan, 452 S.W.3d 723, 727 (Mo.App.W.D. 2015) (quotation omitted). "We will affirm the

3

decree of dissolution unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." Id. (quotation omitted).

*Discussion*

In Point X, Husband argues that the trial court erred in "dividing certain marital property because the trial court's values are inaccurate in that the values are contradictory to the evidence." More specifically, Husband challenges the trial court's division of the Tag Group money market account, E-Trade Account No. 5015, and the SEP Account No. 1805. Wife agrees that the trial court erred in its division of the E-Trade account "because it did not follow the parties' stipulation," but asserts that the trial court properly divided the other accounts.

The trial court has broad discretion in identifying, valuing, and dividing marital property. Cule v. Cule, 457 S.W.3d 858, 864-65 (Mo.App.E.D. 2015); Meier v. Meier, 306 S.W.3d 692, 701 (Mo.App.E.D. 2010). "We presume that the trial court's division of property is correct, and the party opposing the division bears the burden of overcoming this presumption." Stroh v. Stroh, 454 S.W.3d 351, 363 (Mo.App.S.D. 2014) (quotation omitted). "We will interfere with the trial court's distribution of marital property only if the division is so heavily and unduly weighted in favor of one party that it amounts to an abuse of discretion." Valentine v. Valentine, 400 S.W.3d 14, 23-24 (Mo.App.E.D. 2013).

"Error in classifying property is not necessarily prejudicial unless it materially affects the merits of the action." Stroh, 454 S.W.3d at 363. In other words, "[t]he mere erroneous classification of property where the decree is nonetheless fair, will not require a reversal." Id. For this reason, our courts have held that "[a]bsent a contention in the point relied on that the erroneous classification resulted in an unfair overall division of property, the claim has been abandoned and reversal is not required." Id.

In regard to E-Trade Account No. 5015, the parties stipulated as follows: "The parties have an E-Trade account, 5015. The shares of [Exide] Technologies, which [Wife] paid for with her separate property, shall be returned to her. The balance in that account shall be divided equally between the parties." The trial court awarded Wife 1,000 shares of the E-Trade account, and awarded Husband the remaining 10,000 shares. However, it subsequently divided the cash value of the account in half, awarding each party $43,291. We remand the court's award of the E-Trade Account No. 5015 to conform to the parties' stipulation.

As to the SEP Account No. 1805, the parties agree that the trial court properly awarded the account to Husband as his separate property. The parties further agree that the trial court's later reference to a division of the account and an order for a QDRO was an error. We remand the court's award of SEP Account No. 1805 to conform to the parties' stipulation.

Finally, in regard to the Tag Group money market account, Husband claims the trial court erred in awarding Wife one-half of the balance because the account was an asset of the Tag Group, which the trial court had awarded him as his separate property. At trial, Husband testified that he opened the Tag Group money market account because he had "excess funds." Husband stated that the account contained approximately $10,000 and explained, "I have access to that cash whenever I want." Based on Husband's testimony, the trial court deduced that the excess funds in the Tag Group money market account were marital funds that Husband "could have paid himself. He chose not to." In the amended judgment, the trial court divided the Tag Group money market account equally between Husband and Wife.

Husband cites no support for the proposition that the trial court's division of the Tag Group money market account "contradicts the award of [the Tag Group as] separate property to Husband as the Tag Group money market account is an asset of the business." Nor does

5

Husband allege that the trial court's distribution of the Tag Group money market account materially prejudiced him or affected the overall division of property. Husband failed to demonstrate that the trial court's apportionment of the Tag Group money market account constituted an abuse of discretion. Point X is granted in part and denied in part.

### *Conclusion*

We reverse and remand the judgment only with respect to the division of E-Trade Account No. 5015 and SEP Account No. 1805.