**Shirley Jean CUREAU, Respondent,**

v.

**Alfred Joseph CUREAU, Sr., Appellant.**

**No. ED 104097**

Missouri Court of Appeals,
Eastern District,
**DIVISION ONE.**

Filed: March 28, 2017

FOR APPELLANT: Craig G. Kallen, Rachel S. Gray, 13321 North Outer Forty Road, Ste. 300, Town and country, MO 63017.

FOR RESPONDENT: Gary M. Siegel, Kimberly M. Metzger, 231 South Bemiston Avenue, Ste. 910, Clayton, MO 63105.

ROBERT M. CLAYTON III, Presiding Judge

Alfred Joseph Cureau, Sr. ("Husband") appeals from the trial court's Amended Judgment/Order and Decree of Dissolution ("First Amended Judgment") and Second Amended Judgment/Order and Decree of Dissolution ("Second Amended Judgment"). Husband claims the trial court erred in issues related to division of marital property and maintenance. We affirm as modified pursuant to Rule 84.14.[1]

## I. BACKGROUND

### A. The Evidence Adduced at Trial

Shirley Jean Cureau ("Wife") filed her petition for dissolution of marriage on December 4, 2013. A bench trial was conducted on June 26, 2015 and August 18, 2015, revealing the following facts.

Husband and Wife were married on July 17, 1965. Four children were born of the marriage, however, no children remained unemancipated at the time of trial.

Husband is retired, legally blind, and living in an assisted-living facility. The trial court found Husband was receiving $1,871 per month from his Central States Pension and $1,464 per month from Social Security, totaling $3,335 in monthly income. Husband has monthly expenses of $3,074 per month. At trial, Husband testified his income exceeded his expenses by $300 per month, and he deposited any excess. The trial court found Wife was also retired, and was receiving $5,169 per month from her United States Department of Defense pension, $179 per month from Social Security, and $536 per month from her Emerson pension, totaling $5,884 in monthly income. The court found Wife's income met her reasonable needs.

Both parties were employed during the marriage and, while Husband was the higher-earning spouse early in the marriage, Wife became the higher-earning spouse later in the marriage, as a thirty-three year employee of the Department of Defense. After Wife retired, she became Husband's full-time caregiver due to his diminished eyesight. For eleven years between Wife's retirement and dissolution of the parties' marriage, Wife cooked for Husband and cleaned and maintained the marital home.

At the beginning of the parties' marriage, Husband and Wife maintained a joint bank account. However, when Wife began earning more income than Husband approximately thirty-five years prior to trial, Wife withdrew half of the funds in the parties' joint account and opened individual checking and savings accounts at a different bank. Since then, the parties maintained separate financial lives with expenses split between them, although the trial court found no evidence of a binding agreement requiring the parties to split expenses evenly or providing that what the parties earned during the marriage was to be kept separately. The parties slept in separate rooms later in the marriage, and were separated on or about February of 2014.

The parties had various financial disagreements about expenditures for maintaining and updating the marital home, including the repair or replacement of a garage door opener, lighting, a banister, new doors, carpeting, and furniture. The parties also disagreed about payment of bills related to burial plans. Husband refused to contribute to these expenses and Wife either paid for them herself in cash or by incurring credit card debt.

1. All further references to Rules are to Missouri Supreme Court Rules (2016).

Both parties alleged the other committed some form of marital misconduct. Wife made allegations of an incident of Husband's sexual impropriety causing her to file her petition for dissolution. Husband maintained throughout the proceedings that he saved his money earned during the marriage, while Wife wasted marital assets on "many trips to Europe . . . [and] out-of-town . . . casinos and [she] visited local casinos on a weekly basis; and [she] expended substantial funds on clothing." The trial court found there was no credible evidence of significant gambling expense attributable to Wife, and ultimately, the trial court specifically concluded neither party engaged in marital misconduct.

Lastly, Husband sought an award of maintenance, asserting he was permanently disabled and suffered from degenerative health conditions that would require contributions from Wife to meet his future reasonable needs. Husband claimed, alternatively, he would not require maintenance and would be able to meet his future reasonable needs if the trial court awarded him the entirety of his Schwab investment accounts valued at $199,592. However, if the court chose to award Wife all or some of the Schwab accounts, Husband requested a nominal, modifiable maintenance award in the event his living costs increased or his income declined.

## B. The Trial Court's Judgments

At the conclusion of the parties' trial on August 18, 2015, the trial court authorized the parties to submit their proposed judgments, which would be due on or about September 17. However, on September 9, prior to the submission of either party's proposed judgments, the trial court entered a Judgment/Order and Decree of Dissolution ("Original Judgment"), which (1) divided the marital property, (2) awarded Wife, as an additional share of marital property, an equalization payment of $124,033 secured by a lien on Husband's Schwab account identified as "the Bene Plan," and (3) found that neither party was entitled to maintenance.

On October 2, Husband filed a motion to set aside the Original Judgment arguing he had not been afforded the opportunity to submit a proposed judgment to the trial court, and additionally alleging he was unaware of whether Wife had filed a proposed judgment either. On October 5, the trial court granted Husband's motion setting aside the Original Judgment and gave the parties until October 21 to file their proposed judgments.

On November 2, after both parties submitted proposed judgments, the trial court entered its First Amended Judgment, which (1) divided the marital property, (2) reduced the equalization payment awarded to Wife from $124,033 to $115,000, payable according to the same terms as in the Original Judgment, and (3) again denied Husband's request for maintenance, concluding Husband and Wife could both support themselves with their current incomes.

On December 6, Husband filed an amended verified motion for new trial, or, alternatively, a motion to re-open judgment.[2] Husband claimed he had been informed following trial that the income from his pension may be subject to decrease. Husband submitted a copy of a notice stating a calculation had been performed regarding his pension and the calculation indicated Husband's pension would become insolvent without a reduc-

---

**2.** Husband's verified motion for new trial, or, in the alternative, to re-open judgment was first filed on November 5, 2015, but Husband amended the motion and the amended motion was filed on December 6, 2015.

tion in pension benefits. The proposed reduction was to become effective on July 1, 2016. In the motion for new trial or to reopen judgment, Husband asserted the new information "should be considered by the Court in its decision as to the distribution of marital assets and the award of maintenance."

Finally, on February 1, 2016, the trial court entered its one-page Second Amended Judgment awarding Husband "$1 per year in contractual modifiable maintenance" ("Wife's maintenance obligation"). Husband appeals.

## II. DISCUSSION

In Husband's first point on appeal, he asserts the trial court misapplied the law and abused its discretion by ordering him to pay Wife an equalization payment of $115,000 in its First Amended Judgment in conjunction with awarding him nominal, modifiable maintenance in its Second Amended Judgment. In his second point on appeal, Husband argues the trial court erred in ordering Wife to pay Husband one dollar per year in *contractual*, modifiable maintenance pursuant to its Second Amended Judgment, because Wife's maintenance obligation should have been designated as *decretal*, modifiable maintenance.

### A. Standard of Review

As with any court-tried case, our review of a dissolution of marriage action is guided by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Alabach v. Alabach*, 478 S.W.3d 511, 513 (Mo. App. E.D. 2015). Accordingly, the dissolution judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* Pursuant to our standard of review, we view all evidence and permissible inferences therefrom in the light most favorable to the trial court's judgment, and disregard all contrary evidence and inferences. *Coleman v. Coleman*, 318 S.W.3d 715, 719 (Mo. App. E.D. 2010). Moreover, where the trial court did not make a specific finding of fact, we consider that fact found in accordance with the result reached. *Travis v. Travis*, 163 S.W.3d 43, 47 (Mo. App. W.D. 2005); *Liberty v. Liberty*, 826 S.W.2d 381, 383 (Mo. App. E.D. 1992); *see also* Rule 73.01(c).

The trial court is vested with broad discretion in dividing marital property and awarding maintenance. *Coleman*, 318 S.W.3d at 719; *Woodard v. Woodard*, 201 S.W.3d 557, 561 (Mo. App. E.D. 2006). "The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Coleman*, 318 S.W.3d at 720 (quotations omitted). If reasonable minds could differ about the propriety of the trial court's decision, there is no abuse of discretion. *French v. French*, 365 S.W.3d 285, 291 (Mo. App. S.D. 2012).

An appellate court will affirm the trial court's division of marital property unless it is so unduly weighted in favor of one party so as to constitute an abuse of discretion. *Woodard*, 201 S.W.3d at 561. Further, we presume the division of property is correct, and the party challenging the property division bears the burden of overcoming the presumption. *Id.* As to maintenance awards, our Court will not reverse the trial court's order absent an abuse of discretion, and we defer to the trial court even if the evidence could support a different conclusion. *Id.*

### B. Whether the Trial Court Erred in Ordering Husband to Pay Wife $115,000 and Awarding Husband Maintenance

In Husband's first point on appeal, he claims the trial court erred in ordering

him to pay Wife an equalization payment of $115,000. While Husband concedes the trial court also ordered Wife to pay him nominal, modifiable maintenance, he argues the trial court should have awarded him all of the Schwab accounts so he could support himself with those funds eliminating a need for maintenance, nominal or otherwise. According to Husband, the trial court misapplied section 452.330 RSMo 2000,[3] the division of marital property statute, and section 452.335, the statute authorizing maintenance, thus, abusing its discretion. We disagree.

First, as an initial note, Husband cannot now complain of an alleged error which he requested from the trial court. See Workman v. Workman, 293 S.W.3d 89, 101 (Mo. App. E.D. 2009). Husband made two specific requests of the trial court as it related to marital property and maintenance—that he be awarded all of the Schwab investment accounts, or if the court awarded some of the accounts to Wife, that he be awarded nominal, modifiable maintenance. "A party ... cannot rely on 'invited error' on appeal." Id. (quotations in original). Further, even if reasonable persons could disagree as to the

trial court's decision between these two alternatives, there was no abuse of discretion. See French, 365 S.W.3d at 291; Woodard, 201 S.W.3d at 561.

Secondly, a trial court has the ability to divide marital property pursuant to section 452.330, which reads "the court ... shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors...." Section 452.330.1. The parties do not dispute the assets involved were accumulated during the marriage and meet the definition of marital property. The trial court addressed the equalization payment in its First Amended Judgment, which divided the total marital assets of $513,312[4] and marital debts of $37,314. Based on our calculation, the court awarded $126,848 in assets and assigned all of the marital debt to Wife. The trial court awarded $386,464[5] in marital assets to Husband. As previously stated, the court additionally awarded Wife an equalization payment in the amount of $115,000 and secured the judgment with the assets in the Bene Plan account.

In total after the equalization payment, Husband received $271,464 or 52.9% of the

3. All further statutory references are to RSMo 2000.

4. Although not raised by either party, our review of the trial court's judgments and its January 22, 2015 order regarding stipulated values of certain accounts reveals inconsistencies in the value of three accounts. The stipulated amount for Wife's Commerce Bank IRA is $2,773, but the First Amended Judgment lists that account as valuing $2,774. Further, the stipulated amount for the parties' St. Louis CCU shared savings account is $25, but the First Amended Judgment lists the amount as $252. Finally, one of Husband's Regions CDs is stipulated as valuing $3,660, but the First Amended Judgment lists this account's value at $3,060. For purposes of this appeal only, we assume these were typographical errors and our calculations rely on the values stipulated to by the parties.

5. Although not disputed by either party, our review of the record reveals the trial court did not explicitly award an account listed as a marital asset, the account designated "St. Louis CCU #9693," which the parties stipulated as valuing $4,204. However, in the trial court's Original Judgment, in both parties' proposed judgments, and in the First Amended Judgment, this account was designated by an "(H)" indicating it belonged to Husband. Because the proposed judgments so reflect, and because the parties do not dispute the trial court's designation of this account as Husband's, we assume for purposes of this appeal only the trial court awarded this account to Husband and include it in our calculations accordingly.

marital assets. Wife received $241,848 or 47.1% of marital assets, and when the marital debt assigned to Wife of $37,314 is deducted, Wife's net assets total $204,534 or 39.8% of the total assets. Accordingly, Husband has failed to show the trial court's division of property was so unduly weighted in favor of Wife that it amounts to an abuse of discretion, and thus, has failed to overcome the presumption the division of property was correct. *See Coleman*, 318 S.W.3d at 719; *Woodard*, 201 S.W.3d at 561.

Thirdly, Husband argues the trial court "should have applied both [section 452.330] and [section 452.335], in conjunction with each other, and awarded Husband a greater share of the marital property awarding him the [Schwab accounts] without the $115,000 [j]udgment to Wife." Without citing to legal authority, Husband contends the "dual intent" of the two statutes is to encourage the trial court to provide for the financial needs of spouses by property disposition rather than by an award of maintenance.

■ "Two guiding principles are inherent in [s]ection 452.330.1: (1) that property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and (2) the property division should be utilized as a means of providing future support for an economically dependent spouse." *Woodard*, 201 S.W.3d at 561 (quotations omitted). Further, the purpose of maintenance is to "close the gap between the income of the spouse who seeks maintenance and that spouse's monthly expenses." *Workman*, 293 S.W.3d at 98. The trial court's division of property and an award of maintenance must be based on the particular circumstances of the case as they exist at the time of trial. *Id.* at 96, 99.

At the time of trial, the court found that both Husband's and Wife's incomes were adequate to maintain each parties' reasonable needs. *See id.* at 98, 99.[6] It was specifically noted Husband enjoyed monthly savings based on his income and expenses. In both the Original Judgment and the First Amended Judgment, the trial court noted this finding in declining any award for maintenance.

■ However, to address Husband's allegations regarding a potential decrease in his pension income and potential future increases in the cost of Husband's care raised in Husband's amended motion for new trial, or alternatively, to re-open judgment, the trial court found in Husband's favor and granted his renewed request to award him nominal, modifiable maintenance. While the procedural circumstances and multiple judgments are out of the

6. As previously stated, the trial court awarded Husband 52.9% of the marital assets, which we find was both equitable based on the parties' circumstances at the time of trial and appropriate to provide future support to Husband. *See Workman*, 293 S.W.3d at 96, 99; *Woodard*, 201 S.W.3d at 561. This, along with the fact that Husband's income was sufficient to meet his reasonable needs, renders Husband's reliance on *Spicer v. Spicer*, 585 S.W.2d 126 (Mo. App. S.D. 1979) and *In re Marriage of Harrison*, 657 S.W.2d 366 (Mo. App. S.D. 1983) misplaced. In *Spicer*, the trial court awarded the wife a minority of the marital property, along with a monthly maintenance award. 585 S.W.2d at 127-28. The Southern District reversed and remanded, holding the court could not award maintenance "in lieu of an equitable apportionment of marital property." *Id.* at 129. This is in stark contrast to the present case, where the trial court awarded Husband a majority of marital property and also awarded Husband the nominal, modifiable maintenance award. Further, the *Harrison* Court explicitly "emphasize[d] most strongly" that it had "applied the law to the peculiar facts of the case, sua sponte, and the opinion should be limited to its facts." 657 S.W.2d at 372. The *Harrison* Court also determined the trial court's division of property was unfair and inequitable. *Id.* at 369-70.

ordinary, we cannot say the trial court abused its discretion in granting the award of nominal, modifiable maintenance allowing the court to retain jurisdiction and increase Wife's maintenance obligation if necessary to meet Husband's reasonable needs in the future. *See Bushhammer v. Bushhammer*, 816 S.W.2d 271, 274-75 (Mo. App. W.D. 1991) (similarly finding); *see also Green v. Green*, 341 S.W.3d 893, 896-97 (Mo. App. W.D. 2011) (affirming the trial court's retention of jurisdiction over maintenance where there was evidence the parties' circumstances may change in the future); *Workman*, 293 S.W.3d at 100 n.5 (Husband is entitled to seek modification of the maintenance award if his predictions of reduced income come true in the future and he is able to introduce evidence of his present income).

Accordingly, we find the trial court did not abuse its discretion in making an award of marital property, in the form of an equalization payment of $115,000 to Wife, pursuant to section 452.330, and, further, we find the trial court also did not abuse its discretion making such an award in light of the trial court granting Husband's request to be awarded modifiable maintenance pursuant to section 452.335. Therefore, the trial court did not err. Point one is denied.

## C. Whether the Trial Court Erred in Designating Wife's Maintenance Obligation as Contractual

In Husband's second point on appeal, he argues the trial court erred in ordering Wife to pay Husband one dollar per year in *contractual*, modifiable maintenance pursuant to its Second Amended Judgment, because Wife's maintenance obligation should have been designated as *decretal*, modifiable maintenance. Wife agrees the trial court erred in characterizing her maintenance obligation as contrac-

tual rather than decretal, and consents to deletion of the word "contractual" from the Second Amended Judgment.

 Pursuant to Rule 84.14, our Court is allowed to "give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." *Wood v. Wood*, 193 S.W.3d 307, 312 (Mo. App. E.D. 2006) (quoting Rule 84.14). Thus, we are vested with the power to dispose with a remand and render the judgment the trial court should have entered, making any necessary amendments or corrections. *Id.*; *In re Marriage of Lindeman*, 140 S.W.3d 266, 272, 275 (Mo. App. S.D. 2004); *see also* Rule 84.14.

 In this case, the record is clear that the parties entered into no agreement or contract with regard to maintenance, and the trial court is without the authority to award contractual maintenance without such an agreement. *See Barbeau v. Barbeau*, 72 S.W.3d 227, 229 (Mo. App. E.D. 2002); *see also* section 452.325. In addition, the parties concede the trial court erred in designating Wife's maintenance obligation as contractual rather than decretal. Accordingly, under all of the circumstances of this case, we are confident the accurate, fair, and reasonable result would be for our Court to modify the Second Amended Judgment pursuant to Rule 84.14. *See Wood*, 193 S.W.3d at 312; *see also Schuh v. Schuh*, 271 S.W.3d 35, 38 (Mo. App. E.D. 2008); *Liberty*, 826 S.W.2d at 383.

Therefore, we enter the judgment the trial court should have rendered, and hereby order, adjudge, and decree that Wife shall pay Husband one dollar per year in decretal, modifiable maintenance. *See Wood*, 193 S.W.3d at 312; *Lindeman*, 140 S.W.3d at 272, 275; Rule 84.14.

## III. CONCLUSION

For the foregoing reasons, we hold the trial court did not err in ordering Husband to pay Wife an equalization payment of $115,000 and awarding Husband nominal, modifiable maintenance. Therefore, the First Amended Judgment is affirmed. The Second Amended Judgment is modified to delete the word "contractual" and designate Wife's maintenance obligation as "decretal, modifiable maintenance," and is affirmed in all other respects.

Mary K. Hoff, J., and Lisa P. Page, J., concur.